
FILED
2015 Feb-04  PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| STERLING C. BARR, on behalf of himself and all others similarly situated, *et al.,* | ) ) ) ) | |
|     Plaintiffs, | ) ) | Case No.: |
| vs. | ) ) | |
| COMMUNITY HEALTH SYSTEMS, INC.; COMMUNITY HEALTH SYSTEMS PROFESSIONAL SERVICES CORPORATION; FOLEY HOSPITAL CORPORATION, | ) ) ) ) ) ) | |
|     Defendants. | ) ) | |

---

## PLAINTIFF'S CLASS ACTION COMPLAINT

---

Plaintiff, STERLING C. BARR ("Plaintiff"), hereby brings this class action suit against COMMUNITY HEALTH SYSTEMS, INC.; COMMUNITY HEALTH SYSTEMS PROFESSIONAL SERVICES CORPORATION; and FOLEY HOSPITAL CORPORATION, on behalf of himself and other similarly situated individuals.  Plaintiff makes the following allegations based upon the investigation undertaken by Plaintiff's counsel, which included, <u>inter alia</u>,

information from Plaintiff, review and analysis of Defendants' website and press

release, and various news articles and public reports.

## NATURE OF THIS ACTION

1.     Plaintiff brings this class action suit on his own behalf and on behalf

of all other persons or entities in the United States against COMMUNITY

HEALTH SYSTEMS, INC.; COMMUNITY HEALTH SYSTEMS

PROFESSIONAL SERVICES CORPORATION; and FOLEY HOSPITAL

CORPORATION to redress Defendants' failure to adequately safeguard certain

personal identifiable information and personal health information (e.g., patient

names, addresses, birthdates, telephone numbers, and social security numbers and,

possibly including patient credit card, medical or clinical information) (hereinafter

"PII/"PHI") considered protected under the Health Insurance Portability and

Accountability Act ("HIPAA") and entrusted to Defendants was stolen, disclosed,

and/or made accessible to hackers, identity thieves and other unknown persons or

entities.  More specifically, this action arises from Defendants' failure to maintain

adequate computer data security of customer personal information, which was

accessed and taken by a computer "hacker."  As a result of Defendants' wrongful

actions, patient information was taken from Defendants' computer network that

handles a wide range of personal and medical or clinical information for millions

of transactions.  Because of Defendants' actions, many of its patients have had their personal and medical or clinical information compromised, have had their privacy rights violated, have been exposed to and suffered the risk of fraud and identity theft and the current and on going threat of fraud and identity theft, have been the victims of fraud, and have otherwise suffered damages.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A 1332(d), as the matter in controversy exceeds $5 million, Plaintiff has diverse citizenship from Defendants, and there are more than 100 class members. This Court has personal jurisdiction over Defendants because at all relevant times, Defendants have conducted business in all Districts of Alabama.

3.      Venue properly lies in this District pursuant to 28 U.S.C. §1391(a)(2), since the cause of action arose in this District, and the unlawful conduct of Defendant, out of which the cause of action arose, took place in this District.

## PARTIES

4.      Plaintiff Sterling C. Barr resides in Foley, Alabama.  Plaintiff was a patient numerous times at South Baldwin Regional Medical Center in Foley, Alabama ranging from 2010 through the present.  Mr. Barr provided PII/PHI to South Baldwin Regional on numerous occasions.

3

5.      Defendant Community Health Systems, Inc. (hereinafter "CHS") is a Delaware corporation with its principal place of business in Tennessee.  This Defendant, upon information and belief, does business in Alabama, as well as 28 other states.  CHS is the parent company that owns and operates, through subsidiaries, 206 general acute care hospitals in 29 states with approximately 31,000 licensed beds.  CHS is, or was at all relevant times, the parent company for the named hospital defendants.

6.      Defendant Community Health Systems Professional Services Corporation (hereinafter "CHSPSC") is a Delaware corporation with its principal place of business in Tennessee.  Upon information and belief, CHSPSC does business in Alabama as well as 28 other states.

7.      Defendant Foley Hospital Corporation (hereinafter "South Baldwin") is an Alabama corporation with is principal place of business in Baldwin County, Alabama.  Foley Hospital Corporation does business at South Baldwin Regional Medical Center.  South Baldwin is, or was at all relevant times, a subsidiary of CHS and operates a hospital in Foley, Alabama with 112 licensed beds.  South Baldwin is a member of CHS Enterprise and works in concert with other Defendants.

4

## FACTS COMMON TO ALL COUNTS

8.     This is a consumer class action suit brought by Plaintiffs, individually

and on behalf of all other similarly situated persons or entities in the United States,

against COMMUNITY HEALTH SYSTEMS, INC.; COMMUNITY HEALTH

SYSTEMS PROFESSIONAL SERVICES CORPORATION; and FOLEY

HOSPITAL CORPORATION to redress Defendants' failure to adequately

safeguard certain personal identifiable information and personal health information

(e.g., patient names, addresses, birthdates, telephone numbers, and social security

numbers and, possibly including patient credit card, medical or clinical

information) (hereinafter "PII/"PHI") considered protected under the Health

Insurance Portability and Accountability Act ("HIPAA") and entrusted to

Defendants safekeeping was stolen, disclosed, and/or made accessible to hackers,

identity thieves and other unknown persons and entities.  More specifically, this

action arises from Defendants' failure to maintain adequate computer data security

of customer personal information, which was accessed and taken by a computer

"hacker."  As a result of Defendants' wrongful actions, patient information was

taken from Defendants' computer network that handles a wide range of personal

and medical or clinical information for millions of transactions.  Because of

Defendants' actions, many of its patients have had their personal and medical or

clinical information compromised, have had their privacy rights violated, have

been exposed to and suffered the risk of fraud and identity theft and the current and

on going threat of fraud and identity theft, have been the victims of fraud, and have

otherwise suffered damages.

### CLASS ACTION ALLEGATIONS

9.      Plaintiff brings this class action, pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3), on behalf of himself and all others similarly situated,

consisting of all persons or entities in the United States who have had personal and

medical or clinical data stolen from Defendants' computer network and who were

damaged thereby (the "Class").  The Class does not include COMMUNITY

HEALTH SYSTEMS, INC.; COMMUNITY HEALTH SYSTEMS

PROFESSIONAL SERVICES CORPORATION; and FOLEY HOSPITAL

CORPORATION, or their officers, directors, agents, or employees.

10.     The Class consists of possibly millions of patients of Community

Health Systems, Inc.; Community Health Systems Professional Services

Corporation and its subsidiaries located throughout Alabama and the United States.

While the exact number of Class members and the identities of individual Class

members are unknown at this time, and can only be ascertained through

appropriate discovery, based on the fact that thousands of customer accounts have

already been affected, the Class is so numerous that joinder of all Class members is impracticable.

11.    Defendants' conduct affected all Class members in exactly the same way. Defendants' conduct in failing to properly safeguard its customers' personal and medical or clinical data and in failing to notify patients of the security breach as soon as practical after the breach was discovered is completely uniform among the Class.

12.    Questions of law and fact common to all Class members predominate over any questions affecting only individual members. Such questions of law and fact common to the Class include but are not limited to:

a.    whether or not Defendant acted wrongfully by failing to properly safeguard its patients' data;

b.    whether or not Defendant failed to notify Class members of the security breach as soon as practical after the breach was discovered;

c.    whether or not Plaintiff and the Class have been damaged, and if so, what is the appropriate relief as to each member of the Class.

d.    whether Defendants violated HIPPA, FCRA and other relevant statutes by failing to properly secure and transport Plaintiffs' and Class Member's personal and medical or clinical information;

e.       whether Defendants violated HIPPA, FCRA and other relevant statutes by failing to encrypt Plaintiffs' and Class Members' personal and medical or clinical information in accordance with federal standards;

f.       whether Defendants willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiffs' and Class Members' personal and medical or clinical information;

g.       whether Defendants was negligent in storing Plaintiffs; and Class Members' personal and medical or clinical information;

h.       whether Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in protecting and securing their personal and medical or clinical information;

i.       whether Defendant breached a duty to exercise reasonable care in failing to protect and secure Plaintiffs and Class Members' personal and medical or clinical information;

j.       whether Defendants was negligent in failing to secure Plaintiffs and Class Members' personal and medical or clinical information;

k.     whether by publicly disclosing Plaintiffs' and Class Members' personal and medical or clinical information without authorization, Defendants invaded Plaintiffs' and Class Members' privacy; and

l.     Whether Plaintiffs and Class Members sustained damages as a result of Defendants' failure to secure and protect their personal and medical or clinical information.

13.     Plaintiff's claims, as described herein, are typical of the claims of all Class members, as the claims of Plaintiff and all Class members arise from the same set of facts regarding Defendants' failure to protect Class members' personal and medical or clinical information.  Plaintiff maintains no interests that are antagonistic to the interests of other Class members.

14.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions of this type.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

15.     This class action is a fair and efficient method of adjudicating the claims of Plaintiff and the Class for the following reasons:

a.     common questions of law and fact predominate over any question affecting any individual Class member;

b.      the prosecution of separate actions by individual members of the Class would likely create a risk of inconsistent or varying adjudications with respect to individual members of the Class thereby establishing incompatible standards of conduct for Defendant or would allow some Class members' claims to adversely affect other Class members' ability to protect their interests;

c.      although Plaintiff is aware of other litigation that has been filed related to these issues ongoing in this State or elsewhere brought by a nationwide class of patients of Community Health Systems, Inc. it is unclear at this time as to the status of those cases and whether or not those cases will actively safeguards the rights of Plaintiff.

d.      this forum is appropriate for litigation of this action since the cause of action arose in this District;

e.      Plaintiff has selected experienced counsel and anticipates no difficulty in the management of this litigation as a class action; and

f.      the Class is readily definable, and prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress for claims that may be too small to support the expense of individual, complex litigation.

16.    For these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

## VIOLATION OF 18 U.S.C. § 1962(a)

17.    Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as is fully set out herein.

18.    Defendants operated a hospital enterprise that made false promises and statements that it would protect, keep private, and not disclose patient/customer PII/PHI.  Defendants had no intention to make the financial investment necessary to protect, secure, keep private, and not disclose patient/customer PII/PHI.  However, Defendants made these false statements and promises to entice new and continuing business and to lull former patients/customers into a false sense of security that their PII/PHI was being protected, secured, kept private, and not disclosed.  Defendants were motivated by the pursuit of greater financial gain to make false promises and statements, but not make the financial investment necessary to protect, secure, keep private, and not disclose patient/customer PII/PHI.  While the pursuit of profit is not a *per se* violation of RICO, Defendants violated RICO by pursuing profit by unlawful means.  Under RICO, making false promises and statements by mail and wire is

unlawful.  Since Defendants used the US Mail and wire to make false promises and statements that it would protect, secure, keep private, and not disclose patient/customer PII/PHI, they are liable under RICO.

19.     Plaintiffs and Plaintiff Class members bring this count pursuant to 18 U.S.C. § 1964.

20.     The Racketeering Influenced and Corrupt Organizations Act (hereinafter "RICO") provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  18 U.S.C. § 1962(a).

21.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants (hereinafter collectively referred to as "Defendants") or, in the alternative, a various combination thereof derived income, either directly or indirectly, from a pattern of racketeering activity.

22.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants or, in the alternative, a various combination thereof participated as a principal in the pattern of racketeering activity by either:  (1) committing - - or aiding, abetting,

counseling, commanding, inducing, or procuring the commission of - - two or more alleged predicate acts that make up the alleged pattern of racketeering activity; or (2) willfully causing the commission of two or more alleged predicate acts that make up the alleged pattern of racketeering activity, which, if directly performed, would make up the commission of two or more alleged predicate acts that comprise the alleged pattern of racketeering activity.

23.    Some part of that income, or proceeds of that income, was used to acquire or maintain an interest in, or to operate, an enterprise.  Defendants invested and reinvested this income in the Enterprise, which used such funds to continue the scheme to defraud Plaintiffs and class members into paying monies in exchange for promises to protect, secure, keep private, and not disclose to third parties PII/PHI.  Thus, it is the investment of funds that has harmed Plaintiffs and class members.

24.    That enterprise engaged in, or had some effect upon, interstate or foreign commerce.

25.    CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants are persons, within the meaning of 18 U.S.C. §§ 1961(3) & 1962(a), that received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, any part of such income, or the proceeds of

13

such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate, or foreign commerce.

## The RICO Enterprise

26.     CHS, CHSPSC, The Hospital Defendants, The Clinic Defendants have used an association-in-fact "enterprise," within the meaning of 18 U.S.C. § 1961(4), to carry out their pattern of racketeering activity.  This enterprise consists of CHSPSC, The Hospital Defendants, The Clinic Defendants or, in the alternative, CHSPSC and a various combination of The Hospital Defendants and/or The Clinic Defendants (hereinafter "Enterprise").  This enterprise possessed and continues to possess a common purpose and goal, a membership, organizational structure, and ongoing relationships between CHSPSC, The Hospital Defendants, and The Clinic Defendants with sufficient longevity to permit and enable pursuit of the Enterprise's purpose and long-term objective through a continuous course of conduct that affected and continues to affect interstate or foreign commerce.

27.     The Enterprise exists separate and apart from its pattern of racketeering activity, inasmuch as CHSPSC, The Hospital Defendants, and The Clinic Defendants have multiple goals, not all of which are fraudulent.  The lawful activity engaged in by the Enterprise includes ongoing partnerships to operate

hospitals and clinics.  But CHSPSC, The Hospital Defendants, and The Clinic

Defendants have used this enterprise to conduct the related acts of mail and wire

fraud comprising the pattern of racketeering activity.

28.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants

or, in the alternative, CHS, CHSPSC, and a various combination of The Hospital

Defendants and/or The Clinic Defendants constitute a "person" under the civil

RICO statute because they knowingly and fraudulently conducted and participated

in the conduct, the management, and the operation of the Enterprise's affairs,

directly or indirectly, through a pattern of racketeering activity.  CHS, CHSPSC,

The Hospital Defendants, and The Clinic Defendants engaged in such unlawful

conduct by using the Enterprise to conduct lawful activities as well as to further its

fraudulent scheme of causing false and misleading information to be disseminated

to patients (whether current or former) by mail, interstate wires, or interstate

carriers that CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants

would protect, secure, keep private, and not disclose to third-parties PII/PHI.  They

also caused communications by mail, interstate wires, or interstate carriers to

collect monies (under the pretense of invoices, statements, and/or bills for services)

that were the object of the enterprise and the ultimate goal of the false and

misleading information and services promised but not performed.  Pursuit of profit

does not violate per se the mail and wire fraud statutes or civil RICO.  CHS,

CHSPSC, The Hospital Defendants, and The Clinic Defendants violated RICO and

injured Plaintiffs and class members by reason of their conduct of the Enterprise

not to pursue gain, but to do so by unlawful means: to maximize its gain and profit

through a pattern and practice of misrepresentation and concealment of the

systematic decisions that placed financial goals above security, safety, and privacy

considerations, that was conducted in violation of applicable laws and regulations,

that made such operations perilous to the privacy and protection of PII/PHI and

deprived Plaintiffs and class members of services that were part of an agreement

for which they paid adequate consideration, and that rendered CHS, CHSPSC, The

Hospital Defendants, and The Clinic Defendants, and the Enterprise unable to

prevent, contain, and respond to the resulting data breach and deprivation of

services for which Plaintiffs and class members expected and contracted.  The

income or proceeds from such income that CHS, CHSPSC, The Hospital

Defendants, and The Clinic Defendants received directly or indirectly from this

pattern of racketeering activities was then invested, directly or indirectly, in

acquisition of any interest in, or the establishment or operation of, the entities that

comprise the enterprise.  Once such investment, as described in CHS's 2013 10-K

filed with the SEC, in the Northern District of Alabama Southern Division is the

Birmingham replacement hospital on Highway 280 that is known, or will be known, as Grandview Medical Center.  Many more hospitals were built or acquired (such as the acquisition of Health Management Associates) with use income from racketeering activities.  Another such way Plaintiffs and Class members have been harmed is that Defendants have taken the income derived from the Enterprise as described more fully herein and have invested it back in the companies and invested it in staff, inventory, supplies, and material to perpetuate the false promises made the basis of the scheme to defraud.  For example, staff, materials, and supplies are necessary to print invoices, statements, and bills mailed to Plaintiffs and class members and also to print the HIPAA Notice and Patients' Rights and Responsibilities information.  Further, such income was invested and used for website development and hosting of the website that was used to perpetuate the wire fraud alleged herein.  Such conduct affected and continues to affect interstate or foreign commerce.  Further, such income was invested and used for the purposes of making it appear that the Enterprise had the technological capabilities to protect, secure, keep private, and not disclose PII/PHI.  As the direct, proximate and foreseeable result of this pattern of racketeering activities and the data breach it caused, Plaintiffs and the class have been injured and harmed.

## The RICO Predicate Acts

29.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants engaged in a fraudulent scheme to defraud Plaintiffs and class members into believing that they would protect, secure, keep private, and not disclose to third-parties their PII/PHI and paying for such services that were not provided.

30.     **Mail Fraud.**  For the purpose of devising and carrying out their scheme and artifice to defraud Plaintiffs and class members by false and fraudulent pretenses, representations, and promises, CHS, CHSPSC, The Clinic Defendants and/or The Hospital Defendants did place in an authorized depository for mail, or did deposit or cause to be deposited with private commercial interstate carriers and knowingly caused to be delivered by the United States postal service, letters, memoranda, and other matters, in violation of 18 U.S.C. § 1341, or aided and abetted in such criminal acts, as previously described, under 18 U.S.C. § 2.

31.     **Wire Fraud.**  For the purpose of devising and carrying out their scheme and artifice to defraud Plaintiffs and class members by false and fraudulent pretenses, representations, and promises, CHS, CHSPSC, The Clinic Defendants and/or The Hospital Defendants caused to be transmitted by means of wire communication in interstate commerce, writings, signals and sounds, to wit, interstate electronic mail messages and/or facsimile in violation of 18 U.S.C. §

18

1343, or aided and abetted in such criminal acts, as previously described, under 18 U.S.C. § 2.

32.     Examples of these predicate acts of mail and wire fraud include, but are not limited to (upon information and belief, numerous others will be identified in the process of discovery), the following:

a.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants all used the United States mail, a private courier, or interstate or international wires to provide HIPAA notices promising to protect, secure, keep private, and not disclose to third-parties Plaintiffs and class members' PII/PHI. Each and every one of the Hospital Defendants published such notices on their webpage by means of wire communication in interstate commerce.  Such notices were identical or, in the alternative, all notices were identical except for a few that were almost identical.  These documents were false and contained false statements and misrepresentations.

b.     For example, South Baldwin Regional Medical Center published on its website (www.southbaldwinrmc.com), on a date to be determined in discovery, a document entitled "Patient Rights and Responsibilities" that makes the following false statements and misrepresentations:

19

- "You have the right to:  Personal privacy, privacy of your health information and to receive a notice of the facility's privacy practices".

c.      In the alternative, Defendants' use of the United States mail, a private courier, or interstate or international wires to provide Plaintiffs and class members with documents entitled HIPAA Notice and Patient Rights and Responsibilities was designed to lull Plaintiffs and class members into a false sense of security that their PII/PHI would be protected by Defendants and would not be disclosed to third-parties.

d.      In furtherance of and to generate income from the scheme to defraud, CHS, CHSPSC, and The Clinic Defendants, and/or The Hospital Defendants used the United States mail, a private courier, or interstate or international wires in a routine and/or daily practice to deliver invoices, bills, and/or statements, however entitled, for services to Plaintiffs and class members. Such invoices, bills, and/or statements seeking fees that Plaintiffs and class members purportedly owed for services that Defendants' purported to have performed but did not actually perform, such as protecting and not disclosing to third-parties PII/PHI.

e.      In furtherance of the scheme to defraud, CHS, on or about February 26, 2014, used the United States mail, a private courier, or interstate or

20

international wires to deliver its 2013 10-K to the Securities Exchange

Commission and publicly on its website.  That document contained false

statements and/or misrepresentations, including:  "We have developed and utilize a

HIPAA compliance plan as part of our effort to comply with HIPAA privacy and

security requirements.  The privacy regulations and security regulations have and

will continue to impose significant costs on our facilities in order to comply with

these standards."

       f.     In furtherance of the scheme to defraud, CHS, on or about

February 27, 2013, used the United States mail, a private courier, or interstate or

international wires to deliver its 2012 10-K to the Securities Exchange

Commission and publicly on its website.  That document contained false

statements and/or misrepresentations, including:   "Our company-wide compliance

program has been in place since 1977 . . .  Specific written policies, procedures,

training and educational materials and programs, as well as auditing and

monitoring activities, have been prepared and implemented to address the

functional and operational aspects of our business . .. . Another focus of the

program is the interpretation and implementation of the HIPAA standards for

privacy and security." and "We have developed and utilize a HIPAA compliance

plan as part of our effort to comply with HIPAA privacy and security

requirements."

g.     In furtherance of the scheme to defraud, CHS, on or about

February 22, 2012, used the United States mail, a private courier, or interstate or

international wires to deliver its 2011 10-K to the Securities Exchange

Commission and publicly on its website.  That document contained false

statements and/or misrepresentations, including:  "We have developed and utilize a

HIPAA compliance plan as part of our effort to comply with HIPAA privacy and

security requirements."

### The Pattern of Racketeering Activity

33.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants'

previously alleged RICO predicate acts in furtherance of its scheme to defraud

constituted a pattern of racketeering activity within the meaning of 18 U.S.C. §

1961(5) because the predicate acts are related and continuous.  Each predicate act

had the same or similar purpose:  the predicate acts involved material

misrepresentations, omissions, and/or concealment in a scheme to defraud

Plaintiffs and class members out of their money and into believing that

Defendants' would protect, secure, keep private, and not disclose to third-parties

their PII/PHI and to pay a premium for such services.  Included in these predicate

acts are those instances where CHS, CHSPSC, The Clinic Defendants, and/or The Hospital Defendants used or caused to be used the United States mail, a private courier, or interstate or international wires to deliver documents to Plaintiffs and class members, their indemnitors, and the federal government.  This pattern of racketeering is separate from and distinct from the legitimate business operations of the Enterprise alleged herein.

34.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants are associated with the Enterprise and received income derived, directly or indirectly, from a pattern of racketeering activity and used or invested, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate, or foreign commerce. Defendants did so through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1)(B) and 1961(5) and 1962(c), to wit:  multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and multiple instances of wire fraud in violation of U.S.C. § 1343.

35.     Plaintiffs have sufficiently alleged these predicate acts and pattern of racketeering to state a claim under 18 U.S.C. § 1962.  As a proximate result of the pattern of racketeering activity and RICO violations engaged in by CHS, CHSPSC,

The Hospital Defendants, and The Clinic Defendants, Plaintiffs and the class members have suffered injury, damages, and harm.

### Relatedness and Continuity of the Racketeering Activity

36.     All of the predicate acts alleged above are related to the scheme of CHS, CHSPSC, The Hospital Defendants and The Clinic Defendants - - that is, defrauding Plaintiffs and class members.  The acts are all related to CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants' promise to protect, secure, keep private, and not disclose PII/PHI to third-parties.  Continuity is demonstrated by the predicate acts alleged above because the pattern of racketeering involves multiple predicate acts and related predicate acts that have taken place over many years.  Further, these false statements remain and have remained on the Enterprise's websites for many years and similar statements appeared prior.  These predicate acts in furtherance of its scheme illustrate a threat of continued racketeering activity and evidence that the predicate acts constitute the regular way that CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants conduct business.

37.     As a proximate result of the pattern of racketeering activity and RICO violations engaged in by CHS, CHSPSC, The Clinic Defendants, and The Hospital Defendants, Plaintiffs and the Class members have suffered injury, harm, and

24

damages including by not limited to emotional distress, loss of monies paid to

Defendants for services to protect and not disclose PII/PHI, and Plaintiffs and class

members have and will have to spend significant time and money to protect

themselves; including, but not limited to:  the cost of responding to the data breach,

cost of conducting a damage assessment, mitigation costs, costs to obtain credit

reports, costs to obtain future credit reports, cost for credit monitoring, costs for

insurance to indemnify against misuse of identity, costs to rehabilitate Plaintiffs

and class members' PII/PHI, and costs to reimburse from losses incurred as a

proximate result of the breach.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and

severally, for compensatory and/or punitive damages (including statutory treble

damages), the sum to be determined by a jury, which will fairly and adequately

compensate Plaintiffs for the above described damages and injuries, together with

interest from the date of the incident and the costs of the proceeding, including

attorney's fees.

## COUNT TWO

## VIOLATION OF 18 U.S.C. § 1962(b )

38.     Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if

fully set out herein.

39.     Plaintiffs and class members bring this count pursuant to 18 U.S.C. §
1964.

40.     The Racketeering Influenced and Corrupt Organizations Act
(hereinafter "RICO") provides:

> It shall be unlawful for any person through a pattern of racketeering
> activity or through collection of an unlawful debt to acquire or maintain,
> directly or indirectly, any interest in or control of any enterprise which
> is engaged in, or the activities of which affect, interstate or foreign
> commerce.  18 U.S.C. § 1962(b).

41.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants
engaged in a pattern of racketeering activity more fully described previously
herein.

42.     Through the pattern of racketeering activity, CHS, CHSPSC, The
Clinic Defendants, and/or The Hospital Defendants or, in the alternative, a
combination thereof acquired or maintained, directly or indirectly, an interest in or
control of the Enterprise.

43.     Specifically, CHS and CHSPSC's racketeering activities allow them
to maintain control over the Enterprise and acquire new hospitals and clinics for
use in the Enterprise.  For example, CHS does not own every hospital; it leases
some.  CHS described their acquisition strategy in the 2013 Form 10-K:

> Our strategy has also included growth by acquisition.  We generally
> target hospitals in growing, non-urban and selected urban healthcare

markets for acquisition because of their favorable demographic and economic trends and competitive conditions. Because non-urban and suburban service areas have smaller populations, there are generally fewer hospitals and other healthcare service providers in these communities and generally a lower level of managed care presence in these markets. We believe that smaller populations support less direct competition for hospital-based services and these communities generally view the local hospital as an integral part of the community. We believe opportunities exist for skilled, disciplined operators in selected urban markets to create networks between urban hospitals and non-urban hospitals while improving physician alignment in those markets and making it more attractive to managed care. In recent years, our acquisition strategy has also included acquiring selective physician practices and physician-owned ancillary service providers. Such acquisitions are executed in markets where we already have a hospital presence and provide an opportunity to increase the number of affiliated physicians or expand the range of specialized healthcare services provided by our hospitals.

CHS's racketeering activities provides it significant financial resources to enact this ambitious and expensive acquisition strategy. As expressly stated in its 2013 Form 10-K, CHS acquires opportunities only in markets with "favorable . . .. competitive conditions" (i.e., no competitors) and a "lower level of managed care." CHS also states in its 2013 Form 10-K that HIPAA and DHHS "privacy regulations and security regulations have and will continue to impose significant costs on our facilities in order to comply with these standards." That is, actually protecting PII/PHI is a "significant cost" that is an impermeable barrier to entry for new market participants and a fatal cost to hospitals and clinics that make or genuinely intend to make the financial investment to actually comply with privacy

regulations and security regulations.  CHS's racketeering activities, that is generating income money by making false promises to protect and not disclose PII/PHI, allows it the financial ability to takeover hospital facilities because it does not actually comply with its promises and privacy and security regulations.  CHS's failure to comply (that is, collecting monies upon promises to protect, secure, keep private, and not to disclose PII/PHI and not investing that money into protection and security and controls and policies to prevent disclosure to third-parties) also allows them to maintain control of the Enterprise and squeeze out and prevent market competitors (who presumable bear the cost of HIPAA and DHHS compliance) through anti-competitive behavior and a pricing advantage.  This allows Defendants to promise to provide services at an anti-competitive price and also acquire ownership in new ventures that are impressed into the Enterprise.

44.     Further, one purpose of the CHSPSC is to provide management, consulting, and technology service to the Hospital Defendants and Clinic Defendants.  CHSPSC, therefore, is the muscle that allows Defendants to maintain control over the Enterprise and make acquisitions through its management and consulting services.  Through these services, acquisitions are assimilated into the CHS Enterprise.  CHSPSC perpetuates the racketeering activities by not protecting, securing, keeping private and actually disclosing PII/PHI.

45.     The Hospital Defendants and Clinic Defendants play an active role in the maintenance and acquisition described herein because they generate income, make false promises, and execute the anti-competitive behavior that is necessary to maintain the Enterprise and force market competitors into an acquisition.

46.     The Enterprise, through its operations more fully described previously herein, engaged in, or had some effect on, interstate or foreign commerce.

47.     As a proximate result of the pattern of racketeering activity and RICO violations engaged in by CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants, Plaintiffs and the Class members have suffered injury, harm, and damages including but not limited to emotional distress, loss of monies paid to Defendants for services to protect and not disclose PII/PHI, and Plaintiffs and class members have and will have to spend significant time and money to protect themselves; including, but not limited to:  the cost of responding to the data breach, cost of conducting a damage assessment, mitigation costs, costs to obtain credit reports, costs to obtain future credit reports, cost for credit monitoring, costs for insurance to indemnify against misuse of identity, costs to rehabilitate Plaintiffs and class members' PII/PHI, and costs to reimburse from losses incurred as a proximate result of the breach.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages (including statutory treble damages), the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT THREE

## VIOLATION OF 18 U.S.C. § 1962(c)

48.     Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

49.     Plaintiffs and class members bring this count pursuant to  18 U.S.C. § 1964.

50.     The Racketeering Influenced and Corrupt Organizations Act (hereinafter "RICO") provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.  18 U.S.C. § 1962(c)

51.     As described more fully previously herein, an Enterprise existed.

52.     As described more fully previously herein, the Enterprise engaged in, or had some effect on, interstate or foreign commerce.

53.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants or, in the alternative, a various combination thereof were associated with the Enterprise.

54.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants or, in the alternative, a various combination thereof were associated with the Enterprise.

55.     As described more fully previously herein, CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants or, in the alternative, a various combination thereof participated in the Enterprise through a pattern of racketeering activity.

56.     As a proximate result of the pattern of racketeering activity and RICO violations engaged in by CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants or, in the alternative, a combination thereof, Plaintiffs and the Class members have suffered injury, harm, and damages including but not limited to emotional distress, loss of monies paid to Defendants for services to protect and not disclose PII/PHI, and Plaintiffs and class members have and will have to spend significant time and money to protect themselves; including, but not limited to:  the

31

cost of responding to the data breach, cost of conducting a damage assessment, mitigation costs, costs to obtain credit reports, costs to obtain future credit reports, cost for credit monitoring, costs for insurance to indemnify against misuse of identity, costs to rehabilitate Plaintiffs and class members' PII/PHI, and costs to reimburse from losses incurred as a proximate result of the breach.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages (including statutory treble damages), the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT FOUR

## VIOLATION OF 18 U.S.C. § 1962(d)

57.    Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

58.    Plaintiffs and class members bring this count pursuant to 18 U.S.C. § 1964.

59.    The Racketeering Influenced and Corrupt Organizations Act (hereinafter "RICO") provides:  "It shall be unlawful for any person to conspire to

violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

60.     CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants or, in the alternative, a various combination thereof of at least two agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity as described more fully previously herein.

61.     At least one of the defendants (CHS, CHSPSC, one of The Hospital Defendants, or one of The Clinic Defendants) agreed to the overall objective of the conspiracy or, in the alternative, one of the defendants agreed with at least one other defendant to commit two predicate acts described more fully previously herein as part of the conspiracy.

62.     As a proximate result of this conspiracy, Plaintiffs and the Plaintiff class members have suffered injury, harm, and damages including but not limited to emotional distress, loss of monies paid to Defendants for services to protect and not disclose PII/PHI, and Plaintiffs and class members have and will have to spend significant time and money to protect themselves; including, but not limited to:  the cost of responding to the data breach, cost of conducting a damage assessment, mitigation costs, costs to obtain credit reports, costs to obtain future credit reports, cost for credit monitoring, costs of insurance to indemnify against misuse of

identity, costs to rehabilitate Plaintiffs and class members' PII/PHI, and costs to reimburse from losses incurred as a proximate result of the breach.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages (including statutory treble damages), the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT FIVE

## VIOLATION OF 18 U.S.C. § 1030

63.     Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

64.     The Computer Fraud and Abuse Act provides, in pertinent part, liability for "[w]hoever knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or intentionally accesses a protected computer

without authorization, and as a result of such conduct, causes damage and loss."

18 U.S.C. § 1030(a)(5)(A)-(C).

65.     CHS, CHSPSC, one of The Hospital Defendants and/or one of The

Clinic Defendants, or an employee of CHS, CHSPSC, or one of The Hospital

Defendants or one of The Clinic Defendants (for which CHS, CHSPSC, or one of

The Hospital Defendants or one of The Clinic Defendants would be liable under a

theory of *respondeat superior*) knowingly transmitted a program, information,

code, or command to a protected computer without authorization and caused

damage.

66.     As one example, the failure of a hospital, clinic, or multi-state

corporation such as Defendants to patch or install software upgrades for a malware

as notorious as Heartbleed is so inexcusable that the only plausible explanation is

that the failure to take adequate precautions was intentional and/or knowing.  As a

result of this failure, Defendants' computer systems were accessed not once, but

twice.  Given that the transmission was from one computer for which the entity or

employee was authorized to use and transmitted to another (or more) computer(s)

that the entity or employee was not authorized to use, Heartbleed was knowingly

transmitted to a protected computer without authorization and caused damage.  As

one further example, the method in which Heartbleed was acquired - - which will

be flushed out in discovery - - was through accessing or downloading electronic information that exceeded the employee's permissible and/or authorized use.

67.     In the alternative, CHS, CHSPSC, one of The Hospital Defendants or one of The Clinic Defendants, or an employee of CHS, CHSPSC, or one of The Hospital Defendants or one of The Clinic Defendant (for which CHS, CHSPSC, or one of The Hospital Defendants or one of The Clinic Defendants would be liable under a theory of *respondeat superior*) intentionally accessed a protected computer without authorization and recklessly caused damage to the class and others.

68.     In the alternative, CHS, CHSPSC, one of The Hospital Defendants or one of The Clinic Defendants, or an employee of CHS, CHSPSC, or one of The Hospital Defendants or one of The Clinic Defendant (for which CHS, CHSPSC, or one of The Hospital Defendants or one of The Clinic Defendants would be liable under a theory of *respondeat superior*) intentionally accessed a protected computer without authorization, and as a result of such conduct, caused damage and loss.

69.     The computer was used in or affected interstate or foreign commerce or communication.

70.     The damage resulted in losses of more than $5,000 during a one-year period; the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of one or more individuals;

physical injury; a threat to public health or safety; and/or damage affecting ten or more protected computers during any one-year period.

71.     As a proximate result, Plaintiffs and class members have suffered a loss, within the meaning of 18 U.S.C. § 1030, because they have incurred reasonable costs as victims, including the cost of responding to the offense(s), conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense.

72.     As a proximate result, Plaintiffs and the Plaintiff Class members have suffered injury, harm, and damages including but not limited to emotional distress, loss of monies paid to Defendants for services to protect and not disclose PII/PHI, and Plaintiffs and class members have and will have to spend significant time and money to protect themselves; including, but not limited to:  the cost of responding to the data breach, cost of conducting a damage assessment, mitigation costs, costs to obtain credit reports, costs to obtain future credit reports, cost for credit monitoring, costs for insurance to indemnify against misuse of identity, costs to rehabilitate Plaintiffs and class members' PII/PHI, and costs to reimburse from losses incurred as a proximate result of the breach.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by

a jury, which will fairly and adequately compensate Plaintiffs for the above

described damages and injuries, together with interest from the date of the incident

and the costs of the proceeding, including attorney's fees.

## COUNT SIX

## UNJUST ENRICHMENT

73.     Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if

fully set out herein.

74.     Defendants received payment from Plaintiffs to perform services that

included protecting, securing, keeping private, and not disclosing Plaintiffs'

PII/PHI.

75.     Defendants did not protect, secure, and/or keep private Plaintiffs'

PII/PHI and/or disclosed Plaintiffs' PII/PHI, but retained Plaintiffs' payments.

76.     Defendants have knowledge of said benefit.

77.     Defendants have been unjustly enriched and it would be inequitable

for Defendants to retain Plaintiffs' payments.

78.     As a result, Plaintiffs have been proximately harmed and/or injured.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and

severally, for compensatory and/or punitive damages, the sum to be determined by

a jury, which will fairly and adequately compensate Plaintiffs for the above

described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT SEVEN

## MONEY HAD AND RECEIVED

79.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

80.   Defendants have received payment from Plaintiffs to perform services that included protecting and not disclosing Plaintiffs' PII/PHI.

81.   Defendants did not protect Plaintiffs' PII/PHI and/or disclosed Plaintiffs' PII/PHI, but retained Plaintiffs' payments.

82.   The law creates an implied promise by Defendants to pay it to Plaintiffs.

83.   Defendants have breached said implied promise.

84.   Defendants' breach has proximately caused Plaintiffs to suffer harm, injury, and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above

described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT EIGHT

## BREACH OF CONTRACT (express and/or implied)

85.     Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

86.     Plaintiffs paid money to Defendants in exchange for services, which included promises to secure, safeguard, protect, keep private, and not disclose Plaintiffs' PII/PHI to others.

87.     In documents that memorialize the obligations of the parties, Defendants promised Plaintiffs and class members that they would protect, secure, keep private, and not disclose their PII/PHI.

88.     These documents were provided in a manner and during a time where they became part of the agreement for services.

89.     Defendants promised to comply with all HIPAA standards and to make sure that Plaintiffs' PII/PHI was protected, secured, kept private, and not disclosed.

90.     In the alternative, to the extent it was not expressed or, again in the alternative, an implied contract existed in the absence of an express contract

whereby, Defendants promised to comply with all HIPAA and DHHS standards and regulations and to ensure that Plaintiffs' PII/PHI was secured, safeguarded, kept private, protected, and not disclosed to third parties.

91.     To the extent that it was not expressed, an implied contract was created whereby Defendants' promised to safeguard Plaintiffs' health information and PII/PHI from being accessed, copied, and transferred by or disclosed to third parties.

92.     In the alternative, an express contract did not exist, but an implied contract existed between the parties whereby, in exchange for monies from Plaintiffs and class members, Defendants agreed to protect, safeguard, secure, keep private, and not disclose to third-parties Plaintiffs' and class members' PII/PHI.

93.     Under the implied contract, Defendants were further obligated to provide Plaintiffs with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII/PHI.

94.     Defendants did not secure, safeguard, protect, and/or keep private Plaintiffs' PII/PHI and/or disclosed Plaintiffs' PII/PHI to third parties and, therefore, breached its contract with Plaintiffs.

95.     Defendants allowed third parties to access, copy, and transfer Plaintiffs' health information and PII/PHI and, therefore, breached its contract with Plaintiffs.

96.     Furthermore, Defendants' failure to satisfy their confidentiality and privacy obligations resulted in Defendants providing services to Plaintiffs that were of a diminished value.

97.     As a result, Plaintiffs have been harmed, damaged, and/or injured.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT NINE

## NEGLIGENCE

98.     Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

99.     Defendants requested and came into possession of Plaintiffs' PII/PHI and had a duty to exercise reasonable care in securing, safeguarding, keeping private, and protecting such information from being accessed by and disclosed to

third parties.  Defendants' duty arose from the industry standards discussed above and its relationship with Plaintiffs.

100.   Defendants had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' PII/PHI.  The breach of security, unauthorized access, transfer of data, and resulting injury to Plaintiffs' and the Class were reasonably foreseeable, particularly in light of Defendants' inadequate data security system, failure to adequately encrypt the data, failure to install software updates and patches, disregard of warnings by employees, and failure to respond to notorious malware.

101.   Defendants had duties clearly defined by HIPAA and DHHS and defendants breached those duties.

102.   Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs by failing to implement standard industry protocols and/or exercise reasonable care in protecting, securing, keeping private, safeguarding, and not disclosing Plaintiffs' PII/PHI.

103.   Defendants, through their actions and/or omissions, breached their duty to Plaintiffs by failing to have procedures in place to detect and prevent access to Plaintiffs' PII/PHI by unauthorized persons.

104.   But for Defendants' breach of its duties, Plaintiffs' PII/PHI would not have been accessed, copied, transferred, and/or disclosed.

105.   Plaintiffs' PII/PHI was stolen and accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding, securing, protecting, and keeping private such information by adopting, implementing, and maintaining appropriate security measures and encryption.

106.   As a result, Plaintiffs have been harmed, damaged, and/or injured.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT TEN

## WANTONNESS

107.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

108.   Defendants knew, were substantially aware, should have known, or acted in reckless disregard that Plaintiffs would be harmed if Defendants did not safeguard, secure, protect, keep private, and not disclose Plaintiffs' PII/PHI.

109.   Defendants did not safeguard, secure, keep private, and/or protect and disclosed to third parties Plaintiffs' and class members' PII/PHI with a knowledge or consciousness that the action or failure to act will likely or probably cause harm or, in the alternative, with reckless indifference to the consequences.

110.   As a result, Plaintiffs have been harmed, damaged, and/or injured.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT ELEVEN

## NEGLIGENCE PER SE

111.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

112.   Defendants have violated HIPAA by:

a.      Failing to ensure the confidentiality and integrity of electronic protected health information it created, received, maintains, and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

c.      Failing to implement technical policies and procedures that govern the receipt and removal of hardware and electronic media that contain electronic protected health information into and out of a facility to maintain their security in violation of 45 C.F.R. § 164.310(d)(1);

d.      Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

e.      Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

f.      Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2);

g.      Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under

46

the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

      h.    Failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(94);

      i.    Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502 et seq.;

      j.    Failing to effectively train all members of its workforce (including independent contractors involved in the data breach) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

      k.    Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. § 164.530(c).

      113.   Defendants' violation of HIPAA resulted in an injury to Plaintiffs.

114.   Plaintiffs fall within the class of persons HIPAA was intended to protect.

115.   The harms Defendants caused to Plaintiffs are injuries that result from the type of behavior that HIPAA was intended to protect.

116.   As a result, Plaintiffs have been harmed, damaged, and/or injured.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT TWELVE

## BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING

117.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

118.   Every contract contains a covenant of good faith and fair dealing that prohibits a contracting party from intentionally depriving the other contracting party of the benefits of the contract (the "Covenant").

119.   Through the conduct stated in this Complaint, Defendants have breached the Covenant.

120.   Defendants' acts and omissions deprived Plaintiffs from receiving the benefits of the agreement.

121.   Defendants' breach of the Covenant completely and proximately caused plaintiffs to suffer harm and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT THIRTEEN

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

122.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

123.   The Fair Credit Reporting Act ("FCRA") requires consumer reporting agencies to adopt and maintain procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner fair and equitable to consumers while maintaining the confidentiality, accuracy, relevancy and proper utilization of such information.  15 U.S.C. § 1681(b).

124.   FCRA specifically protects medical information, restricting its dissemination to limited instances.  See, e.g., 15 U.S.C. §§ 1681a(d)(3); 1681b(g); 1681c(a)(6).

125.   Defendants are a Consumer Reporting Agency as defined under FCRA because on a cooperative nonprofit basis and/or for monetary fees, Defendants regularly engage, in whole or in part, in the practice of assembling information on consumers for the purpose of furnishing Consumer Reports to third parties and/or uses interstate commerce for the purpose of preparing and/or furnishing Consumer Reports.

126.   By collecting, gathering and storing information bearing on consumers' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living, Defendants create "consumer reports" on their patients, which they transmit to medical service providers affiliated with Defendants to use for the purpose of establishing patient's eligibility for credit for medical treatments and services, rendering each Defendant a "consumer reporting agency" under the FCRA.

127.   As a Consumer Reporting Agency, Defendants were (and continue to be) required to adopt and maintain procedures designed to protect and limit the dissemination of consumer credit, personnel, insurance and other information (such

as Plaintiffs' and Class Members' PII/PHI) in a manner fair and equitable to

consumers while maintaining the confidentiality, accuracy, relevancy, and proper

utilization of such information.  Defendants, however, violated FCRA by failing to

adopt and maintain such protective procedures which, in turn, directly and/or

proximately resulted in the theft of Plaintiffs' PII/PHI and its wrongful

dissemination into the public domain.

128.   Plaintiffs' PII/PHI, in whole or in part, constitutes medical

information as defined by FCRA.  Defendants violated FCRA by failing to

specifically protect and limit the dissemination of Plaintiffs' PII/PHI into the

public domain.

129.   As a direct and/or proximate result of Defendants' willful and/or

reckless violations of FCRA, as described above, Plaintiffs' PII/PHI was stolen

and/or made accessible to unauthorized third parties in the public domain.

130.   As a direct and/or proximate result of Defendants' willful and/or

reckless violations of FCRA, as described above, Plaintiffs were (and continue to

be) damaged in the form of, without limitation, expenses for credit monitoring and

identity theft insurance, mitigation costs, cost of conducting a damage assessment,

out-of-pocket expenses, anxiety, emotional distress, loss of privacy, and other

economic and non-economic harm.

131.   Plaintiffs and Class Members, therefore, are entitled to compensation for their actual damages including, inter alia, (i) out-of-pocket expenses incurred to assess and mitigate the actual and increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (ii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iii) deprivation of the value of the PII/PHI, for which there is a well-established national and international market; (iv) anxiety and emotional distress; and (v) statutory damages of not less than $100, and not more than $1000, each, as well as attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. § 1681n(a).

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT FOURTEEN

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

132.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set forth herein.

133.   In the alternative, and as described above, Defendants negligently violated FCRA by failing to adopt and maintain procedures designed to protect and limit the dissemination of Plaintiffs' PII/PHI for the permissible purposes outlined by FCRA which, in turn, directly and/or proximately resulted in the theft and dissemination of Plaintiffs' PII/PHI into the public domain

134.   It was reasonably foreseeable that Defendants' failure to implement and maintain procedures to protect, keep private, and secure Plaintiffs' PII/PHI would result in an unauthorized third party gaining access to Plaintiffs' PII/PHI for no permissible purpose under FCRA.

135.   As a direct and/or proximate result of Defendants' negligent violations of FCRA, as described above, Plaintiffs' PII/PHI was stolen and/or made accessible to unauthorized third parties in the public domain.

136.   As a direct and/or proximate result of Defendants' negligent violations of FCRA, as described above, Plaintiffs were (and continue to be) damaged in the form of, without limitation, expenses for credit monitoring and identity theft insurance, mitigation costs, cost of a damage assessment, out-of-pocket expenses, anxiety, emotional distress, loss of privacy and other economic and non-economic harm.

137.   Plaintiffs and Class Members, therefore, are entitled to compensation for their actual damages including, inter alia, (i) out-of-pocket expenses incurred to assess and mitigate the actual and increased risk of identity theft and/or identity fraud pressed upon them by the Data Breach; (ii) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (iii) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; (iv) anxiety and emotional distress; and (v) statutory damages of not less than $100, and not more than $1000, each, as well as attorneys' fees, litigation expenses and costs, pursuant to 15 U.S.C. §1681o.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT FIFTEEN

## INVASION OF PRIVACY

138.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

139.   Defendants' misconduct, as described herein, and failure to encrypt, protect, secure, keep private, or otherwise keep Plaintiffs' PII/PHI confidential constituted an invasion of Plaintiffs' privacy.

140.   Plaintiff and Class Members PII/PHI is not a matter of public concern.

141.   Defendants' failures, acts, omissions, and/or misconduct resulted in an unreasonable intrusion into the private life and matters of Plaintiffs and class members.

142.   Defendants' failures, acts, omissions, and/or misconduct constituted a public disclosure of private facts, the nature of which a reasonable person of ordinary sensibilities would find objectionable and offensive.

143.   As a direct result of Defendants' failures and misconduct, Plaintiffs' PII/PHI was disclosed to the public.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT SIXTEEN

## CONSPIRACY

144.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

145.   As set forth supra, Defendants acted in concert or materially aided each other and others in a conspiracy to accomplish all of the acts set forth in every count by unlawful, oppressive, or immoral means.

146.   Defendants acted in concert or materially aided each other and others in committing an overt act in furtherance of the conspiracy.

147.   The CHS Enterprise had substantial operations in Alabama and the defendants operating and conducting business in Alabama played a critical role in the conspiracy.  Each out-of-state defendant agreed to and/or performed the same wrongful acts alleged herein.  Further, by such agreement and wrongful acts, each defendant generated income that, directly or indirectly, funded the wrongful acts that took place in Alabama.

148.   Such overt acts are sufficient for the Court to exercise *in peronsam* conspiracy jurisdiction over every defendant under Alabama law.

149.   As a proximate result, Plaintiffs and class members have been harmed, damaged, and injured.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by

a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## COUNT SEVENTEEN

## VICARIOUS LIABILITY

150.   Plaintiffs adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

151.   Defendants served as the employer and/or master of their employees, staff, or medical professionals.

152.   Defendants have vicarious liability for the acts and omissions of all persons or entities under Defendants' control either directly or indirectly, including their employees, agents, consultants, medical directors, and independent contractors, whether in-house or outside entities, individuals, agencies or pools causing or contributing to the injuries, damage, and harm to Plaintiffs and Class Members.

153.   Further, Defendants' employees, staff, agents, or medical professionals were in the line and scope of employment when they performed or failed to perform acts and/or omissions alleged herein.

154.   Additionally, the acts and/or omissions of Defendants' employees, staff, agents, or medical professionals performed or failed to perform were ratified by Defendants.

155.   Defendants are vicariously liable for the acts of their employees, staff, agents, or medical professionals.

156.   Such conduct was the proximate cause of Plaintiffs' and Class Members' injuries, damage, and harm.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally, for compensatory and/or punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiffs for the above described damages and injuries, together with interest from the date of the incident and the costs of the proceeding, including attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief:

A.      that this Court certify this action as a Class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), and appoint Plaintiff and his counsel to represent the Class;

B.      that this Court enter judgment in favor of Plaintiff and the Class, and against Defendants under the legal theories alleged herein;

C.      that this Court award damages under the common law theories alleged herein;

D.      that this Court award attorneys' fees, expenses, and costs of this suit;

E.      that this Court award Plaintiff and the Class pre-judgment and post-judgment interest at the maximum rate allowable by law; and

F.      that this Court award such other and further relief as it may deem just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, on behalf of himself and the Class, demands a trial by jury on all issues so triable.

By:   */s/ E. Kirk Wood*
        E. KIRK WOOD (ASB-2397-W55E)
        Attorney for Plaintiff

**OF COUNSEL:**
**E. KIRK WOOD**
**WOOD LAW FIRM, LLC**
P. O. Box 382434
Birmingham, Alabama 35238-2434
Telephone:  (205) 612-0243
Facsimile:  (866) 747-3905
ekirkwood1@bellsouth.net

## REQUEST FOR SERVICE BY CERTIFIED MAIL

**SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:**

Community Health Systems, Inc.
c/o Registered Agent
Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

Community Health Systems Professional Services Corporation
c/o Registered Agent
CSC – Lawyers Incorporating Svc., Inc.
150 S. Perry Street
Montgomery, AL 36104

Foley Hospital Corporation
c/o Registered Agent
CSC – Lawyers Incorporating Svc., Inc.
150 S. Perry Street
Montgomery, AL 36104

By:   */s/ E. Kirk Wood*
E. KIRK WOOD
Attorney for Plaintiff